OPINION
{¶ 1} Defendant-appellant, Donald Coldiron, appeals his convictions in the Clermont County Court of Common Pleas for receiving stolen property and the subsequent probation violation that occurred as a result. We affirm the convictions.
 {¶ 2} On September 20, 2002, appellant and his live-in girlfriend, Kelly Whitt, made purchases using a stolen credit card and stolen checks. The credit card and checks belonged to Shelly Cramer who reported to the Union Township Police that her purse and its contents had been stolen earlier in the day. By the time Cramer called her credit card company to cancel her credit card, several purchases had already been made.
 {¶ 3} Appellant and Whitt bought items totaling $510.61 at the Eastgate Meijer store using the credit card. The two purchased several items including a Microsoft Xbox. Appellant also bought a carton of cigarettes during which time a store clerk asked appellant to provide identification to verify his age. Later that evening, appellant and Whitt were identified at a nearby Target store buying a Sony Playstation 2 and some baby items with a credit card.
 {¶ 4} Although Cramer cancelled her credit card, appellant and Whitt went to Milford's House of Hobbies together on September 21, and purchased a high performance model car engine for $259. Whitt used one of Cramer's stolen checks and identification to buy the engine appellant selected.
 {¶ 5} On September 22, 2002, appellant attempted to return the Xbox to the Meijer. The store clerk who originally sold the carton of cigarettes recognized appellant and notified store security. Appellant was identified as the same customer who purchased the Xbox with the stolen credit card. He brought the receipt for return, but the bottom of the receipt was torn off, obscuring the method of payment.
 {¶ 6} Aware of both the suspicious circumstances of the return and appellant's possible connection to the stolen credit card, a customer service manager recorded appellant's identification information. During the process, witnesses testified that appellant appeared nervous and sweaty. The manager denied the return and appellant left the store. The information collected led to appellant's arrest on September 27, 2002.
 {¶ 7} Appellant was convicted by a jury for receiving stolen property, namely Cramer's credit card, based upon a theory of complicity. As a result of the conviction, appellant was also found in violation of probation from a prior offense. He was sentenced to 18 months in prison for the probation violation and received five years of community control for use of the stolen credit card to be served consecutively.
 {¶ 8} Appellant now appeals the convictions raising four assignments of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "There was insufficient evidence upon which to convict the defendant."
 {¶ 11} In determining whether the evidence at trial was sufficient to support a conviction, an appellate court will "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 12} Appellant argues that there was insufficient evidence to convict on a complicity theory of liability when the state did not show that appellant provided assistance, incitement, or encouragement to the principal. Appellant also contends that the state did not show the concurrence of a mental state and unlawful act.
 {¶ 13} R.C. 2913.51(A) defines the offense of receiving stolen property as follows:
 {¶ 14} "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through a commission of a theft offense."
 {¶ 15} R.C. 2923.03(A), describing criminal complicity, provides in pertinent part:
 {¶ 16} "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense."
 {¶ 17} To establish that an accused acted as an aider and abettor to a crime, the state must prove the accused incited, assisted, or encouraged the criminal act. See State v. Sims (1983), 10 Ohio App.3d 56. Evidence of aiding and abetting another in the commission of a crime may be demonstrated by both direct and circumstantial evidence. State v. Cartellone (1981),3 Ohio App.3d 145, 150. However, a person's mere association with a principal offender is not enough to sustain a conviction based upon aiding and abetting. Sims at 58. "Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act." Id. at 59, citing State v. Peasley
(1914), 80 Wash. 99.
 {¶ 18} Appellant maintains that because he neither possessed nor used the stolen credit card, he did not assist, incite or encourage the commission of the offense. After a thorough review of the evidence, we find that there is sufficient evidence to support appellant's conviction for aiding and abetting Whitt in the commission of receiving stolen property.
 {¶ 19} The evidence shows that appellant was an active participant in the purchase transaction. As appellant and Whitt proceeded to the Meijer U-scan register, the two included all of their items together. A store clerk testified that appellant personally selected the carton of cigarettes as part of the sale using Cramer's credit card. Two days later, appellant attempted to return the Xbox by himself. The portion of the receipt that contained the method of payment was ripped off at the bottom. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that appellant assisted Whitt in using the stolen credit card.
 {¶ 20} Appellant's argument that the state did not present sufficient evidence to establish a concurrence of a mental state and unlawful act is also without merit. The record contains sufficient evidence that appellant knew or had reasonable cause to believe that the credit card used was obtained through the commission of a theft offense. Appellant was with Whitt when the Xbox was purchased on the stolen credit card. Later, appellant tried to return the game system with a receipt that was specifically altered to hide the method of payment. Meijer's normal return policy for a credit card purchase required a customer to provide the same card to re-credit the amount. Furthermore, appellant appeared nervous and sweaty as the customer service manager wrote down appellant's information before denying the return. After his return was refused, appellant left the store without protestation. Although circumstantial, this evidence is appropriate and sufficient for a rational trier of fact to find that appellant was aware that the credit card was stolen.
 {¶ 21} Appellant's first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "The trial court's determination of the defendant's guilt was against the manifest weight of the evidence."
 {¶ 24} An appellate court considering whether a conviction was against the manifest weight of the evidence must weigh the evidence and all reasonable inferences from it, consider the credibility of the witnesses and determine whether in resolving conflicts, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction. Martin at 175.
 {¶ 25} An appellate court will not reverse a judgment as being against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Thompkins at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. See Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 26} Appellant argues that the jury's use and determination of guilt based upon circumstantial evidence constitutes a manifest miscarriage of justice requiring the conviction to be reversed and a new trial ordered.
 {¶ 27} Circumstantial evidence and direct evidence possess the same probative value. Jenks, 61 Ohio St.3d at paragraph one of the syllabus. The jury properly determined appellant's guilt based upon the evidence and all reasonable inferences from it. A witness testified that appellant was with a female at the Meijer. Though Whitt did not testify at trial, evidence was presented that Cramer's credit card was used to pay for the Xbox and cigarettes. Appellant participated in two similar transactions. Later, appellant tried to return the Xbox with the altered receipt. We do not believe that the jury's decision created a manifest miscarriage of justice requiring reversal based upon the record before us. Accordingly, appellant's second assignment of error is overruled.
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "The court erred in allowing testimony about other transactions that occurred at locations or days different from that alleged in the indictment."
 {¶ 30} The admission and exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion and a showing that the accused has suffered material prejudice, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v.Issa, 93 Ohio St.3d 49, 64, 2001-Ohio-1290. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Barnes, 94 Ohio St.3d 21, 23,2002-Ohio-68.
 {¶ 31} Evid.R. 404(B) states:
 {¶ 32} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 33} Appellant argues that the evidence concerning the Target and House of Hobbies transactions should have been excluded because it only establishes appellant's mental state for those subsequent actions and not the offense for which he was indicted. We disagree. The rule explicitly permits evidence of other acts to be used for purposes of establishing intent. There is no qualification as to when the "other acts" must occur. SeeState v. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524 (testimony regarding defendant's subsequent act of trading murder weapon for crack cocaine admissible to establish connection of weapon to defendant).
 {¶ 34} While evidence of other acts cannot be used to prove the character of a person and that appellant acted in conformity with that character, the trial court can properly admit such evidence for purposes of establishing intent, knowledge, or common plan. The record shows that appellant and Whitt went to multiple stores in a 24-hour period. They purchased several large ticket items of a similar nature. The purchases were made with Cramer's stolen possessions, both the credit card and her personal check. We find that the trial court did not abuse its discretion in admitting evidence of these subsequent transactions for the purposes of establishing intent and knowledge. Appellant's third assignment of error is overruled.
 {¶ 35} Assignment of Error No. 4:
 {¶ 36} "The court erred by refusing to instruct the jury that reasonable doubt may be established through the lack of evidence."
 {¶ 37} Any party may propose jury instructions. Crim.R. 30;State v. Guster (1981), 66 Ohio St.2d 266, 269. If the proposed instruction for the jury is correct, pertinent and timely presented, the trial court must include it, at least in substance, in the general charge. Id. citing Cincinnati v.Epperson (1969), 20 Ohio St.2d 59, paragraph one of the syllabus. However, the trial court is not required to give a proposed jury instruction verbatim; the court may use its own language to communicate the same legal principles. State v.Sneed (1992), 63 Ohio St.3d 3, 9.
 {¶ 38} Appellant argues that the trial court erred in refusing his request that the jury instruction on reasonable doubt mention that reasonable doubt may arise out of evidence and the lack of evidence.
 {¶ 39} The trial court provided a definition of reasonable doubt in the general charge to the jury. Instead of appellant's proposed instruction, the trial court recited the statutory definition of reasonable doubt as contained in R.C. 2901.05(D). The Ohio Supreme Court has recognized that the use of the definition of "reasonable doubt" in R.C. 2901.05(D) when providing a general charge to the jury is proper and satisfies constitutional standards. State v. Frazier, 73 Ohio St.3d 323,330, 1995-Ohio-235; State v. Nabozny (1978), 54 Ohio St.2d 195, paragraph two of the syllabus.
 {¶ 40} Thus, the trial court's jury instruction on reasonable doubt was proper. Appellant's proposed instruction did not provide any substantive changes to the definition given by the trial court. Appellant's proposed instruction merely amplified the statutory definition of reasonable doubt contained in the jury instruction. The Ohio Supreme Court has noted that there is always a danger in giving instructions that amplify statutory definitions. State v. Van Gundy, 64 Ohio St.3d 230, 235,1992-Ohio-108. Indeed, the Ohio Supreme Court has suggested to the courts of this state that any amplification on the statutory definition of reasonable doubt is inadvisable. Id. at 236. Therefore, a trial court is not required to accept a party's proposed jury instruction that merely amplifies statutory definitions that are used in a general charge.
 {¶ 41} Accordingly, we conclude that the trial court did not err in refusing to adopt appellant's proposed language concerning the definition of reasonable doubt. As such, we overrule appellant's fourth assignment of error.
 {¶ 42} Judgment affirmed.
Young, P.J., and Walsh, J., concur.