[Cite as *State v. Thompkins*, 2014-Ohio-1688.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2013-07-119 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 4/21/2014 |
| - vs - | : | |
| | : | |
| DYLAN S. THOMPKINS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 13CRB01958-A

Geoffrey A. Modderman, Hamilton City Prosecutor, 345 High Street, Hamilton, Ohio 45011, for plaintiff-appellee

Ched Peck, 304 North Second Street, Hamilton, Ohio 45011, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Dylan Tompkins,[1] appeals from his conviction in the Hamilton Municipal Court of one count of domestic violence. For the reasons detailed below, we affirm.

---

1. As a point of clarification, we note appellant's last name has been spelled two different ways: Tompkins and Thompkins. For purposes of consistency, we choose to use "Tompkins," the spelling used by appellant in his appellate brief.

{¶ 2} On June 9, 2013, Lauren Sibert sustained injuries following an alleged physical altercation with appellant at her Butler County residence located in Hamilton, Ohio. Although appellant and Sibert were not living in the same household nor involved in a romantic relationship at the time of the incident, they were the natural parents of a one-year-old child. Appellant was subsequently charged with domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. Following a bench trial, appellant was convicted and sentenced to 180 days in jail with 178 days suspended, ordered to pay a fine of $116, and placed on supervised community control for two years. Appellant now appeals his conviction, raising a single assignment of error for review:

{¶ 3} MR. TOMPKINS' CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 4} In his sole assignment of error, appellant argues his conviction is against the manifest weight of the evidence. This argument lacks merit.

{¶ 5} A manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Wolf*, 12th Dist. Butler No. CA2012-12-263, 2013-Ohio-5271, ¶ 8. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Hibbard*, 12th Dist. Butler Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707, ¶ 10. "This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction." *State v. Coldiron*, 12th Dist. Clermont Nos. CA2003-09-078, CA2003-09-079, 2004-Ohio-5651, ¶ 24; *State v. Gray*, 12th Dist. Butler No.

CA2011-09-176, 2012-Ohio-4769, ¶ 78.

{¶ 6} The crime of domestic violence is defined in R.C. 2919.25(A) and provides "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." *State v. Smith*, 12th Dist. Warren No. CA2011-01-002, 2011-Ohio-2346, ¶ 13; *State v Short*, 12th Dist. Butler No. CA2010-12-322, 2011-Ohio-5744, ¶ 28. The term "family or household member" includes "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(b); *Smith* at ¶ 13.

{¶ 7} In the present case, the state presented the testimony of the victim, Sibert, as well as the investigating police officer, Officer David Anglin. Sibert testified that appellant is the father of her one-year-old child. According to Sibert, on June 9, 2013 appellant came to her residence between 2:30 a.m. and 3:00 a.m., pounded on the front door, and began yelling. When she answered the door, Sibert testified that appellant grabbed her by the throat, began choking her, and threw her to the ground. Sibert also testified that she sought medical treatment for the injuries received in connection with that altercation.

{¶ 8} Next, the state presented the testimony of Officer Anglin, the investigating police officer. Officer Anglin testified that when he arrived at the scene, Sibert was very upset, crying, and complaining of pain in her leg. Officer Anglin also testified that he interviewed appellant during the course of his investigation. According to Officer Anglin, appellant admitted that he pushed Sibert:

> Q. When you said, "his side of the story," what did [appellant] say beyond what you've already testified?
>
> [Appellant] [s]aid he came in [to Sibert's residence]. [Appellant and Sibert] got in an argument. He started to leave and she chased him down the street and uh--he had to push her off of him.

{¶ 9} Following the state's presentation of evidence, the defense presented the

testimony of appellant's mother, Tracy Hollingsworth, and step-father, David Hollingsworth. The Hollingsworths both testified that Sibert called their house in the middle of the night and stated that she had an altercation with appellant and complained of physical injuries. As a result, the Hollingsworths went to Sibert's house located a few blocks away. While at Sibert's house, Tracy Hollingsworth testified that Sibert gave conflicting accounts of the altercation. Furthermore, the Hollingsworths also testified that the Sibert's residence did not show any signs of recent struggle. For example, the Hollingsworths testified that the house seemed orderly and Sibert's one-year-old child was calm and not crying.

{¶ 10} Finally, the trial court also heard appellant testify in his own defense. Appellant admitted to going to Sibert's house on June 9, 2013 at around 2:30 a.m. Appellant testified that he had a conversation with Sibert that lasted approximately 15-20 minutes. Appellant further testified that, when he went to leave, Sibert followed him out of the house and started yelling. According to appellant, Sibert then grabbed him and started "swinging." As a result, appellant testified that he stuck his hand out in an attempt to keep Sibert away, which caused her to trip and fall over a rock.

{¶ 11} In light of the evidence presented, the trial court did not clearly lose its way in concluding that appellant was guilty of domestic violence. This case came down to the credibility of the witnesses. The state presented the testimony of Sibert who clearly identified appellant and testified that appellant had grabbed her by the throat, choked her, and threw her to the ground. Sibert further identified appellant as the father of her one-year-old child. *See* R.C. 2919.25(F)(1)(b); *Smith*, 2011-Ohio-2346 at ¶ 13-14. Although appellant offered conflicting evidence regarding the account, i.e., Sibert tripped, the trial court, as trier of fact, was in the best position to weigh the credibility of the witnesses. Following the presentation of all evidence, the trial court clearly found the state's testimony to be more credible. As such, we find the trial court's verdict was supported by the weight of the evidence.

Accordingly, appellant's sole assignment of error is overruled.

{¶ 12} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.