[Cite as *State v. Geiger*, 2020-Ohio-2679.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-06-062 |
| | : | O P I N I O N |
| - vs - | | 4/27/2020 |
| | : | |
| ZACHARY A. GEIGER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR35092

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Kidd & Urling LLC, Thomas W. Kidd, Jr., 8913 Cincinnati-Dayton Road, West Chester, Ohio 45069, for appellant

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Zachary A. Geiger, appeals from his conviction in the Warren County Court of Common Pleas for felonious assault. For the reasons discussed below, we affirm appellant's conviction.

{¶ 2} On January 14, 2019, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. The charges arose out of

allegations that on November 24, 2018, appellant, while an inmate at the Lebanon Correctional Institution (LCI) located in Warren County, Ohio, acted in coordination with his cellmate, Cody Mills, to attack a third prisoner, Walter Shannon. During the attack, fan motor parts wrapped in a sock were used to strike Shannon in the head. Shannon suffered a laceration to the back of his head and his jaw was broken in two places.

{¶ 3} Appellant pled not guilty to the charge and a jury trial commenced on June 6, 2019. The state presented testimony from two LCI corrections officers, from Shannon, and from Ohio State Highway Patrol Sergeant Jeff Madden. According to the corrections officers, the incident involving appellant, Mills, and Shannon occurred just after 2:00 p.m. on November 24, 2018 in the dayroom of cell block E. The altercation was recorded on a security camera and was observed by one of the corrections officers.

{¶ 4} Shannon was seated at a table in the dayroom watching TV. Mills and appellant were also present in the dayroom. Appellant approached Shannon and struck him in the back of the head. According to Shannon, it felt like he was hit with something harder than a fist. Shannon fell towards the ground after being struck by appellant and, as Shannon fell, Mills lunged at him and began striking him. Mills struck Shannon with an improvised weapon made out fan motor parts tucked inside a sock. While Mills used the weapon to strike Shannon, appellant kicked Shannon and struck him with his fists. Shannon tried to run from appellant and Mills, but they pursued him and continued their assault.

{¶ 5} Corrections officers ordered the fight to stop, and appellant and Mills went to the ground. As he went to lay on the ground, Mills slid the improvised weapon towards appellant, where it was recovered by a corrections officer. Mills and appellant were handcuffed and taken to segregation.

{¶ 6} Shannon testified that as a result of the attack he sustained a laceration to the back of his head and his jaw was broken in two places. Shannon was hospitalized for four

days and underwent surgery. Metal plates were put in Shannon's chin and staples were placed in the back of his head.

{¶ 7} Sgt. Madden testified that on November 28, 2018, he interviewed appellant about the attack. This interview, which occurred after appellant waived his *Miranda* rights, was recorded and the recording played for the jury. During the interview, appellant informed Sgt. Madden that he and Mills had formed a plan to attack Shannon after confronting Shannon about $30 that was owed to Mills. The plan was for both appellant and Mills to attack Shannon so that "it would look good for the prison to ride [them] out" by transferring them to another facility.

{¶ 8} Appellant told Sgt. Madden that he and Mills were sitting in the dayroom with Shannon, and after Shannon told Mills he was not going to pay Mills $30, appellant stood up and punched Shannon once in the jaw with a closed fist. Appellant claimed he hit Shannon only hard enough to stun him. Appellant told Sgt. Madden that he may have punched Shannon one or two more times after Shannon fell to the ground, but he denied kicking Shannon. Mills then joined the attack and started hitting Shannon before the fight was broken up.

{¶ 9} Appellant claimed he did not know about the weapon Mills used until he was pulled into the prison captain's office. Appellant denied seeing the weapon during the attack and denied seeing the weapon when Mills slid it towards him after the fight. Appellant told Sgt. Madden that Mills had gone back to the cell he shared with appellant shortly before the attack on Shannon, and appellant believed that was when Mills grabbed the weapon.

{¶ 10} Following Sgt. Madden's testimony, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion, and appellant called Mills as his sole witness. Mills testified that he pled guilty to felonious assault and was sentenced to a two-year prison term for his involvement in the attack. He stated he and appellant planned the

attack on Shannon in hopes of getting transferred out of LCI and placed in a cleaner facility. Mills acknowledged that fighting alone would not be enough for a transfer; it would take fighting a corrections officer or "hurt[ing] somebody like that."

{¶ 11} Mills testified that when he and appellant assaulted Shannon, he "was trying to hurt" Shannon because he did not like Shannon and Shannon owed him money. Mills stated he hit Shannon multiple times "everywhere on his body" with the weapon he retrieved from his cell before the assault. He recalled hitting Shannon in the face six or seven times with the weapon, as well as kicking Shannon a few times. Mills testified appellant assisted him in the assault, but he claimed appellant did not punch Shannon. Rather, Mills claimed appellant merely kicked Shannon's body while Shannon was on the ground. Mills stated appellant did not know about the weapon that was used during the assault and that the two men had never discussed causing serious harm to Shannon.

{¶ 12} The jury found appellant guilty of felonious assault. The trial court sentenced appellant to a three-year prison term, which was run consecutively to the prison term appellant was already serving.

{¶ 13} Appellant timely appealed, raising the following as his sole assignment of error:

{¶ 14} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN [APPELLANT'S] CONVICTION.

{¶ 15} Appellant argues his conviction for felonious assault is not supported by sufficient evidence and is against the manifest weight of the evidence. Specifically, appellant contends the state failed to present evidence that he shared Mills' criminal intent as the evidence demonstrated he was unaware that Mills was going to use a weapon in the attack on Shannon.

- 4 -

{¶ 16} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 17} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387

(1997). Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 18} Appellant was convicted of complicity to felonious assault. "A charge of complicity may be stated in terms of [the complicity statute] or in terms of the principal offense." R.C. 2923.03(F). *See also State v. Herring*, 94 Ohio St.3d 246, 251 (2002). Pursuant to the complicity statute, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). The culpability required for a felonious assault offense is knowingly. A person is guilty of felonious assault if the person knowingly causes serious physical harm to another. R.C. 2903.11(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 19} To be complicit to a crime by aiding and abetting, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "[A] person's mere association with a principal offender is not enough to sustain a conviction based upon aiding and abetting." *State v. Coldiron*, 12th Dist. Clermont Nos. CA2003-09-078 and CA2003-09-079, 2004-Ohio-5651, ¶ 17. The accused "must actively participate in some way and contribute to the unlawful act to aid or to abet." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 49, citing *State v. Salyer*, 12th Dist. Warren No. CA2006-03-039, 2007-Ohio-1659, ¶ 27. Aiding and abetting may be shown through either

direct or circumstantial evidence, and "'participation in criminal intent may be inferred from the presence, companionship, and conduct before and after the offense is committed.'" *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 19, quoting *State v. Lett*, 160 Ohio App.3d 46, 2005-Ohio-1308, ¶ 29 (8th Dist.).

{¶ 20} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find appellant's conviction for felonious assault is supported by sufficient evidence and is not against the weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offense proven beyond a reasonable doubt. The state presented appellant's admission that he and Mills planned to attack Shannon in order to get transferred out of LCI. Appellant and Mills formed the plan in their cell before going to the dayroom to carry out the attack. Appellant struck Shannon first, punching him in the jaw with his closed fist and causing Shannon to fall from his seat. After Mills joined in the attack, using an improvised weapon, appellant continued the assault by punching and kicking Shannon.

{¶ 21} Relying on his statement to Sgt. Madden and Mills' testimony, appellant contends the state did not demonstrate he "knowingly" caused serious physical harm to Shannon as there was no evidence that he knew a weapon would be used in the attack. However, the jury was entitled to discredit Mills' and appellant's denials about appellant's knowledge of the weapon. After all, appellant and Mills were cellmates who had planned the attack together and the weapon was taken from their shared cell. Furthermore, during the attack, it was obvious Mills was using a weapon, yet appellant persisted in punching and kicking Shannon.

{¶ 22} Additionally, the attack on Shannon occurred with such brutality that it was foreseeable that Shannon would suffer serious physical harm. Appellant and Mills continued to strike Shannon after he fell to the ground and tried to get away. Appellant

admitted to striking Shannon in the jaw. The jury could infer that appellant's strike to Shannon's jaw resulted in Shannon's jaw injuries, which required surgery to repair.

{¶ 23} Accordingly, given the testimony and video evidence admitted at trial, we find that appellant's conviction for felonious assault is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.

{¶ 24} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.