[Cite as *State v. Tenbrook*, 2020-Ohio-5227.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-01-005 |
| - vs - | : | O P I N I O N<br>11/9/2020 |
| | : | |
| CHASE STEVEN TENBROOK, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2019-04-0647

Michael T. Gmoser, Butler County Prosecuting Attorney, Stephen M. Wagner, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Michele Temmel, 6 S. Second St., Suite 305, Hamilton, Ohio 45011, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Chase Steven Tenbrook, appeals from a jury's verdict finding him guilty of single counts of robbery and aggravated robbery following a jury trial held in the Butler County Court of Common Pleas. For the reasons outlined below, we affirm the jury's verdict finding Tenbrook guilty of both offenses.

{¶ 2} On May 29, 2019, the Butler County Grand Jury returned an indictment

charging Tenbrook with one count of robbery in violation of R.C. 2911.02(A)(2), a second-degree felony. The indictment also charged Tenbrook with one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony. The aggravated robbery offense included an accompanying firearm specification.

{¶ 3} The charges arose after Tenbrook, along with three codefendants, Jeremiah Miller, Phillip M. Teasley, and Anthony J. Lewis, robbed the victim, D.H., at gunpoint. The robbery occurred on the night of April 8, 2019 at a residence located on 15th Avenue in Middletown, Butler County, Ohio. The property stolen from D.H. during the robbery included money taken from D.H.'s wallet and a firearm removed from D.H.'s vehicle. The record indicates that Teasley then pointed that firearm at D.H.'s head during the robbery.

{¶ 4} A three-day jury trial was held beginning November 12, 2019. During trial, the jury heard testimony from six witnesses. This included testimony from D.H. and Tenbrook. It also included testimony from several officers with the Middletown Police Department. Following deliberations, the jury returned a verdict finding Tenbrook guilty on both the robbery and aggravated robbery offenses. The jury also found Tenbrook guilty of the accompanying firearm specification.

{¶ 5} On December 19, 2019, the trial court held a sentencing hearing. During this hearing, the trial court found the robbery and aggravated robbery offenses were allied offenses of similar import subject to merger for purposes of sentencing. After the state elected to proceed on the aggravated robbery offense, the trial court sentenced Tenbrook to an indefinite term of a minimum of 8 years and a maximum of 12 years in prison. The trial court also sentenced Tenbrook to an additional, consecutive three-year prison term on the accompanying firearm specification.

{¶ 6} Tenbrook now appeals the jury's verdict finding him guilty of both the robbery and aggravated robbery offenses, raising the following single assignment of error for review.

{¶ 7} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR ROBBERY AND AGGRAVATED ROBBERY AND THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} Tenbrook argues the jury's verdict finding him guilty of both robbery and aggravated robbery was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

{¶ 9} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33.

{¶ 10} Unlike a challenge to the sufficiency of the evidence, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, an appellate court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier

- 3 -

of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. "An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10, citing *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 11} As noted above, the jury found Tenbrook guilty of robbery in violation of R.C. 2911.02(A)(2). Pursuant to that statute, no person shall inflict, attempt to inflict, or threaten to inflict physical harm on another, while committing, attempting to commit, or fleeing a theft offense. *State v. Keller*, 12th Dist. Butler No. CA2018-07-137, 2019-Ohio-1397, ¶ 9. The jury also found Tenbrook guilty of aggravated robbery in violation of R.C. 2911.01(A)(1). That statute provides that no person, in attempting or committing a theft offense, shall "have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." As defined by R.C. 2913.01(K)(4), the term "theft offense" includes a "conspiracy or attempt to commit, or complicity in committing" a theft in violation of R.C. 2913.02(A)(1), which "prohibits the purposeful deprivation of property from another by knowingly exerting or obtaining control over that property without consent of the owner." *See State v. Singleton*, 9th Dist. Summit No. 28457, 2020-Ohio-2920, ¶ 6.

{¶ 12} Tenbrook initially argues the jury's verdict finding him guilty of robbery and aggravated robbery was not supported by sufficient evidence. Tenbrook supports this claim by pointing out several alleged "inconsistencies" in D.H.'s testimony that he believes cannot be "ignored." These alleged inconsistencies include: (1) D.H. initially testifying that he was not familiar with Middletown and had not been to Middletown before the night of the robbery,

but later testifying that he actually had been to Middletown before, including to the 15th Avenue residence where the robbery occurred; (2) D.H. testifying that he had never communicated with his then "friend" Tenbrook through Snapchat, a social media application, and also testifying that he had communicated through Snapchat with Miller even though he and Miller were only acquaintances; (3) D.H. testifying that he was able to recognize Tenbrook's voice on the phone even though Tenbrook did not identify himself by name; and (4) D.H. testifying that he had known Tenbrook for approximately eight months, but later "changed that testimony to a couple of months."

{¶ 13} Tenbrook also finds it significant that (1) D.H. testified that Tenbrook had participated in the robbery even though D.H. was "on the ground in a fetal position covering his face;" (2) D.H. testified that he believed the firearm that Teasley used during the robbery was loaded with an ammunition clip "even though the clip extends only 2-3 inches below the stock of the barrel;" (3) D.H. testified that he told his "friends it was Teasley and Miller who beat him up, never mentioning [Tenbrook];" (4) D.H. told a detective with the Middletown Police Department that it was Miller and another unidentified individual who had come out to his vehicle shortly after the robbery and told him to leave when D.H. testified at trial that it was actually Miller and Tenbrook who had come out to his vehicle; and (5) the money stolen from D.H.'s wallet during the robbery, as well as the ammunition clip loaded into the firearm Teasley used during the robbery, was never recovered even though officers from the Middletown Police Department responded to the scene "fairly quickly."

{¶ 14} Tenbrook believes these alleged "inconsistencies," coupled with his own trial testimony denying his involvement in the attack, require the jury's verdict be reversed. However, despite Tenbrook's claims, we agree with the state and find none of these alleged "inconsistencies" material to whether the state provided sufficient evidence to prove Tenbrook participated in the robbery and aggravated robbery of D.H. beyond a reasonable

doubt  This remains true despite Tenbrook's own trial testimony denying any involvement in the attack.

{¶ 15} At trial, D.H. testified that Tenbrook, who he at that time considered a "close friend," called him through a Snapchat account belonging to Miller.  During this call, D.H. testified that Tenbrook offered him $50 if he would come pick him up in Middletown at a residence located on 15th Avenue and take him home.  D.H. agreed.  D.H. testified that he then drove to Middletown to pick up Tenbrook.  D.H. testified that upon his arrival at the 15th Avenue residence that he called Miller through Snapchat.  D.H. testified that Miller answered the phone and told him to "come inside."

{¶ 16} D.H. testified that he then parked his vehicle outside the 15th Avenue residence and "walked inside the house, which the door was standing open."  D.H. testified that after coming inside Teasley grabbed him from behind, gave him a bear hug "[w]rapping his arms fully around [him] to where [he] can't move," and took him to the ground.  D.H. testified that Tenbrook, Miller, and Lewis then got up from a nearby couch where they were sitting and started "attacking" him by "hitting" and "kicking" him in the chest, stomach, ribs, and head.  Specifically, as D.H. testified, this attack was a continuous barrage of "[p]unches, kicks, it was just nonstop punches and kicks."

{¶ 17} When asked if there was any doubt that Tenbrook was involved in this attack, D.H. testified, "No."  D.H. instead testified that he was certain that Tenbrook had punched and kicked him multiple times during the attack.  As D.H. testified:

> Q: Did you ever see [Tenbrook] hit you?
>
> A: Yes.
>
> Q: How many times?
>
> A: At least three or five.

Q: Did you ever see [Tenbrook] kick you?

A: Two or three times.

Q: Any doubt in your mind about that?

A: No.

Q: Any chance you are mistaken about that?

A: No.

{¶ 18} D.H. also testified that he remembered "one time opening [his] eye" and seeing Tenbrook punch him in the cheek with a closed fist. D.H. further testified that he saw Tenbrook kick him in the "core" of his body. D.H. additionally testified when asked what he was experiencing during this attack:

A: Pain, just I feel like I'm blacking out. I keep my eyes closed as much as possible when I do open it's just another hit.

Q: Okay. Well, who's hitting you?

A: [Tenbrook, Miller, and Lewis].

Q: Okay. And are they all hitting you at once or are they taking turns? Explain this to us.

A: All at once.

Q: Okay. What is Teasley doing?

A: He's holding me.

{¶ 19} D.H. testified that this attack resulted in him absorbing at least 20 to 30 punches and between 10 and 20 kicks. D.H. testified that Tenbrook, Miller, and Lewis also took off his shoes, belt, pants, and watch. D.H. testified that he then saw Miller remove his wallet from his pants and pocket the money inside. D.H. testified that once the attack stopped that Miller watched over him as he laid on the floor bleeding while Tenbrook, Teasley, and Lewis exited the 15th Avenue residence and went to D.H.'s vehicle parked outside.

{¶ 20} D.H. testified that Tenbrook, Teasley, and Lewis came back inside approximately three to four minutes later. Upon their return, D.H. testified that Teasley pointed the firearm that D.H. kept stored in his trunk at D.H.'s head. D.H. testified that Teasley then told him, "if it was up to me, I would've killed you, but they're the reason I'm not." D.H. testified that Tenbrook was at that time standing next to Teasley approximately two feet away. When asked if Tenbrook acted at all surprised by what was going on, D.H. testified, "No."

{¶ 21} Explaining what happened next, D.H. testified:

> Teasley has my rifle that I had in my trunk, holds it to my head. They're all pushing me out the door, telling me to get out. I'm stumbling out the door. [Miller] and [Tenbrook] are the two walking out to [my] truck, which it was parked in the back. At the time, it was running. I got in, saw my stereo was gone, I didn't even think to look for everything else. At that point, I was still being hit by [Tenbrook and Miller on my side, arm, and side of my head.]

{¶ 22} D.H. testified that once inside his vehicle that Tenbrook and Miller told him to leave and not come back. D.H. testified that he then drove away, "saw somebody, told them to call the cops immediately," and report that he had just been "beaten and robbed." D.H. testified that he then spoke with the responding officers from the Middletown Police Department and identified Tenbrook as one of the individuals who participated in the attack. When asked if there was any doubt that Tenbrook was one of the individuals involved, D.H. testified, "No." D.H. also testified that he later told his friends that he believed it was Tenbrook who had "set [him] up." There is no dispute that D.H. suffered a black eye, bloody nose, bruises, scrapes, and swelling to his head as a result of the attack. There is also no dispute that the firearm Teasley used during the attack was later tested and found to be operable.

{¶ 23} "When an individual acts to aid or abet a principal in the commission of an

offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender." *State v. Evans*, 8th Dist. Cuyahoga No. 108648, 2020-Ohio-3968, ¶ 54, citing R.C. 2923.03(F). This is more commonly known as a charge of complicity. "'A charge of complicity may be stated in terms of [the complicity statute] or in terms of the principal offense.'" *State v. Geiger*, 12th Dist. Warren No. CA2019-06-062, 2020-Ohio-2679, ¶ 18, quoting R.C. 2923.03(F). "Aiding and abetting may be shown through either direct or circumstantial evidence, and participation in criminal intent may be inferred from the presence, companionship, and conduct before and after the offense is committed." *State v. Fletcher*, 12th Dist. Brown No. CA2016-08-016, 2017-Ohio-1006, ¶ 53. Such is the case here. Therefore, because there was sufficient evidence to prove Tenbrook participated in the attack on D.H., or at the very least aided and abetted Miller, Teasley, and Lewis, in the attack on D.H., the state provided sufficient evidence to support the jury's verdict finding Tenbrook guilty of robbery in violation of R.C. 2911.02(A)(2) and aggravated robbery in violation of R.C. 2911.01(A)(1). Tenbrook's claim otherwise lacks merit.

{¶ 24} Tenbrook also argues the jury's verdict was against the manifest weight of the evidence. This is because, according to Tenbrook, D.H.'s testimony was not credible and wholly reliable given the alleged inconsistencies in D.H.'s testimony outlined above. This includes D.H.'s testimony that the firearm used in the robbery was loaded with an ammunition clip when an officer with the Middletown Police Department testified that the "first time he heard the clip was in the gun" was through D.H.'s trial testimony. Tenbrook believes this requires the jury's verdict finding him guilty of robbery and aggravated robbery be reversed when considering he testified that he was "genuinely afraid" of what would happen if he tried to stop D.H. from being attacked "so he stood by and watched" as his "friend" got robbed.

{¶ 25} However, while Tenbrook believes D.H.'s testimony lacked credibility when compared to that of his own, it is well-established that "a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11. This is because, "[a]s the trier of fact in this case, the jury was in the best position to judge the credibility of witnesses and the weight to be given the evidence." *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24, citing *State v. Jones*, 12th Dist. Butler No. CA2015-02-020, 2015-Ohio-5029, ¶ 41; *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 42 ("[t]he weight to be given the evidence and the credibility of witnesses are primarily jury issues").

{¶ 26} The jury was in fact free to believe or disbelieve all, part, or none of D.H.'s testimony. *See State v. Helton*, 12th Dist. Warren No. CA2018-12-141, 2019-Ohio-4399, ¶ 22 ("[t]he jury was free to believe or disbelieve all, part, or none of the testimony elicited from the state's witnesses in support of each offense"); *see, e.g., State v. Thiel*, 3d Dist. ¶ 154 (the jury was free to believe the victim's testimony that appellant had placed the victim in a headlock while appellant's friend assaulted the victim). The same is true as it relates to Tenbrook's testimony. *See State v. Harner*, 12th Dist. Clinton No. CA2019-05-011, 2020-Ohio-1184, ¶ 23 ("[t]he jury, as the trier of fact, was free to believe all, part, or none of [the] testimony of each witness").

{¶ 27} By its verdict, the jury clearly choose to credit some, if not all, of D.H.'s testimony while at the same time discrediting some, if not all, of Tenbrook's testimony. This was well within the jury's purview as the trier of fact and ultimate fact finder. *See State v. Graffius*, 7th Dist. Columbiana No. 18 CO 0008, 2019-Ohio-4961, ¶ 11 ("[t]he jury was free to believe either version of the facts and, based on [a]ppellant's conviction, apparently believed the victim"). Therefore, because the jury's verdict finding Tenbrook guilty of

robbery in violation of R.C. 2911.02(A)(2) and aggravated robbery in violation of R.C. 2911.01(A)(1) was supported by sufficient evidence and was not against the manifest weight of the evidence, Tenbrook's single assignment of error lacks merit and is overruled.

{¶ 28} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.