[Cite as *State v. Osborne*, 2020-Ohio-5563.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-07-107 |
| | : | O P I N I O N |
| - vs - | | 12/7/2020 |
| | : | |
| SHAWN D. OSBORNE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2018-08-1517


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Engel & Martin, LLC, Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for appellant


**RINGLAND, J.**

{¶1} Appellant, Shawn Osborne, appeals his conviction in the Butler County Court of Common Pleas for aggravated robbery. For the reasons discussed below, we affirm Osborne's conviction.

{¶2} Amanda Ruby, a manager at the Captain D's restaurant in Fairfield, testified at trial that she entered the restaurant at around 11:30 on August 15, 2018. She spent about a half-hour in the restaurant, stocking and preparing the restaurant for opening the next day. When she arrived, the restaurant was closed and there were no other cars in the

parking lot. As she locked up and began to leave, she noticed Osborne, who she did not know, sitting in the driver's seat of her truck in the parking lot. Angry and upset, Ruby approached the vehicle and told Osborne to get out. She asked him why he was there and told him she was calling the police.

{¶3} Osborne told Ruby his name was Jamie Kerns and that his friend had broken into the vehicle and was down the street at McDonalds. When Osborne got out of the vehicle, Ruby noticed the window had been broken. Her wallet and around $20 to $30 in cash from the console were missing. In addition, the interior dome light was ripped out. Osborne told Ruby to follow him to McDonald's and he would "get her stuff back."

{¶4} During this time, Ruby had been attempting to call the police, but was unable to get the home screen on her phone to appear. Osborne began walking toward McDonald's, so she followed him in her truck in an effort to keep an eye on him while continuing to try to get her phone working and call the police. On entering McDonald's, no workers were at the counter and none appeared when Ruby called for help, so she stepped behind the counter. As she stepped behind the counter, Osborne left the restaurant.

{¶5} When the McDonald's worker failed to help, Ruby walked back outside. She began asking Osborne why he "would do such a thing" and telling him that she wanted her stuff back. Osborne gave Ruby her wallet back and she began to walk back to her truck, still attempting to call police. She was finally able to connect to 9-1-1, but as she got into her truck, Osborne prevented her from shutting the door, pulled out a knife and said "look what I have here." Ruby leaned back to avoid the knife. She was still on the phone with a dispatcher and told the dispatcher that Osborne had a knife. Osborne began telling Ruby to give him the phone. Osborne grabbed Ruby's arm and took the phone and threw it across the parking lot. When Ruby went after the phone, Osborne got into the truck and began to drive off. Ruby jumped in the truck bed.

{¶6}    When Osborne realized Ruby was in the back of the truck, he began jerking the wheel back and forth and kept reaching around, trying to stab Ruby with the knife. Eventually, police began following the vehicle and Osborne got out of the truck and ran into the dark toward an apartment building.  Ruby remained on the phone with 9-1-1 the entire time of the incident.  Osborne was arrested the following day in a truck stolen from a construction company.  A knife was found in the cup holder of the vehicle.

{¶7}    Osborne was charged with aggravated robbery and grand theft for the incident.  At trial, Ruby and several police officers testified.  Camera footage from Captain D's, McDonald's and a nearby business were admitted, in addition to a recording of the 9-1-1 call and body camera footage of the police officer on the scene the night of the incident. A jury found Osborne guilty of both charges.  At sentencing, the grand theft charge was merged into the aggravated robbery charge and Osborne was sentenced accordingly.

{¶8}    On appeal, Osborne raises three assignments of error for our review.

{¶9}    FIRST ASSIGNMENT OF ERROR:

{¶10}   THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING TO GIVE A LESSER INCLUDED OFFENSE JURY INSTRUCTION

{¶11}   In his first assignment of error, Osborne challenges the trial court's decision to deny his request for a jury instruction on a lesser-included offense.  At trial, Osborne requested an instruction on the lesser-included offense of robbery.

{¶12}   A jury instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense.  *State v. Carroll*, 12th Dist. Clermont Nos. CA2007-02-030 and CA2007-03-041, 2007-Ohio-7075, ¶ 136, citing *State v. Carter*, 89 Ohio St.3d 593, 600, 2000-Ohio-172, (2000).  An instruction is not warranted, however, simply because the defendant offers some evidence to establish the lesser included

offense. *State v. Gray*, 12th Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 23, citing *State v. Shane*, 63 Ohio St.3d 630, 632-633, (1992). There must instead be sufficient evidence to allow the jury to reasonably reject the greater offense and find the defendant guilty on a lesser included offense. *State v. Anderson*, 12th Dist. Butler No. CA2005-06-156, 2006-Ohio-2714, ¶ 11. When making this determination, the trial court must view the evidence in a light most favorable to the defendant. *State v. Tolle*, 12th Dist. Clermont No. CA2014-06-042, 2015-Ohio-1414, ¶ 11.

{¶13} We review a trial court's decision to not instruct the jury on a lesser included offense for an abuse of discretion. *State v. Grimm*, 12th Dist. Clermont No. CA2018-10-071, 2019-Ohio-2961, ¶ 27. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 14.

{¶14} An offense qualifies as a lesser included offense when "the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *State v. Owens*, Slip Opinion No. 2020-Ohio-4616, ¶ 8, quoting *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 26. In making this assessment, a court compares the elements of each crime. *Evan* at ¶ 14.

{¶15} The parties do not dispute the fact that robbery is a lesser included offense of aggravated robbery. R.C. 2911.01(A)(1) defines aggravated robbery and provides that no person, in attempting or committing a theft offense, shall "have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." Robbery is defined by R.C. 2911.02(A)(2), which provides that no person shall inflict, attempt to inflict, or threaten to inflict physical harm on another, while committing, attempting to commit, or fleeing a theft

offense. *State v. Keller*, 12th Dist. Butler No. CA2018-07-137, 2019-Ohio-1397, ¶ 9. Thus, in this case, the failure to instruct on the offense of robbery constitutes error only if the jury could reasonably have found that Osborne committed the robbery without the use of a deadly weapon.

{¶16} The court determined that a reasonable juror could find that Ruby was mistaken about Osborne having a knife, but that a reasonable jury could not find force or threat of force without the use of the knife. The only evidence that the court considered as force was Osborne's actions in grabbing Ruby's arm and throwing her cell phone. The court determined that it was more likely that Osborne committed this act to avoid the 9-1-1 call, and not as an action in furtherance of the theft itself. Osborne argues that the trial court substituted what it thought of the evidence instead of reviewing the evidence in a light most favorable to him.

{¶17} However, given the uncontroverted evidence, we find that a jury could not reasonably find Ruby's testimony regarding the robbery believable, yet find that Osborne did not have a deadly weapon. "'The mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged.'" *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, ¶ 22, quoting *State v. Wilkins*, 64 Ohio St. 2d 382, 387 (1980). Instead, "the quality of the evidence offered * * * determines whether a lesser-included-offense charge should be given to a jury." *State v. Wine* at ¶ 26. When a court reviews the quality of the evidence offered, the court must consider "[t]he whole of the state's case." *State v. Bethel*, 110 Ohio St. 3d 416, 2006-Ohio-4853, ¶ 141 (2006), citing *State v. Goodwin*, 84 Ohio St.3d 331, 345, 1999 Ohio 356, (1999).

{¶18} The evidence regarding the use of the knife in this case is uncontroverted and consistent. Ruby testified repeatedly that Osborne had a knife, threatened her with it, and

stabbed at her as he was driving the truck. During the 9-1-1 call, which was played for the jury, as the events were occurring Ruby repeatedly told the dispatcher that appellant had a knife and was trying to kill her. The body camera video of the officer who arrived at the scene during the incident documents Ruby telling the officer that Osborne had a knife and threatened her with it and tried to stab her as she was in the bed of the truck. When Osborne was arrested, a knife was found in the cupholder of the vehicle he was driving. Although Osborne argues the knife is not visible on surveillance video of the incident and the knife was not tested for DNA, these facts are not inconsistent with the testimony that Osborne used a knife during the offense. Osborne did not present any testimony or evidence to indicate the knife was not used during the offense.

{¶19} In similar circumstances, this court and other courts have determined that no error occurs when a trial court denies a request for a lesser-included instruction when there is uncontroverted evidence of an element of the crime, as there is no reasonable basis, other than speculation, for the jury to find the defendant not guilty of the greater offense and guilty of the lesser-included offense. *See State v. Hines*, 12th Dist. Clermont No. 2017-06-025, 2018-Ohio-1780 (although defendant argued no physical evidence of penetration, in light of uncontroverted statements by the victim that defendant digitally penetrated her, no reasonable basis to find sexual contact, but not sexual conduct); *State v. Smith*, 1st Dist. Hamilton No. C-76135, 1977 Ohio App. Lexis 8535 (June 22, 1977) (testimony of both victims uncontroverted that defendant used a knife); *State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104 (victim's testimony regarding use of force uncontroverted); *State v. Jackson*, 4th Dist. Highland Co. No. 18CA7, 2018-Ohio-4289 (uncontroverted evidence of force used to enter residence).

{¶20} Accordingly, although based on different reasoning, we find the trial court did not abuse its discretion in denying the request for a lesser-included jury instruction. See

*State v. Adams*, 12th Dist. Butler No. CA2010-12-321, 2011-Ohio-1721, ¶ 22; *State v. Baker*, 12th Dist. Clermont No. CA2018-06-042, 2019-Ohio-2280, ¶ 26 (an appellate court will not reverse a judgment that is based on erroneous reasoning if that judgment is otherwise correct, that is, it achieves the right result for the wrong reason). Therefore, Osborne's first assignment of error is overruled.

{¶21} SECOND ASSIGNMENT OF ERROR:

{¶22} THE CONVICTIONS IN THIS MATTER WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶23} THIRD ASSIGNMENT OF ERROR:

{¶24} THE CONVICTIONS IN THIS MATTER WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶25} In his second and third assignments of error, Osborne challenges the sufficiency and manifest weight of the evidence. Specifically, he challenges the determination that he used a deadly weapon to commit the offense.

{¶26} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶27} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177,

- 7 -

2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.)

{¶28} An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52 (1997). Moreover, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶29} As mentioned above, Osborne was convicted of aggravated robbery, which states no person, in attempting or committing a theft offense, shall "have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.01(A)(1). As defined by R.C. 2913.01(K)(4), the term "theft offense" includes a "conspiracy or attempt to commit, or complicity in committing" a theft in violation of R.C. 2913.02(A)(1), which "prohibits the purposeful deprivation of property from another by knowingly exerting or obtaining control over that property without consent of the owner." *State v. Tenbrook*, 12th

Dist. Butler No. CA2020-01-005, 2020-Ohio-5227, ¶ 11.

{¶30} On appeal, Osborne does not dispute the determination that he committed a theft offense when he took Ruby's truck. Instead, he argues the evidence does not support a finding that he had a deadly weapon on or about his person or control, or that he displayed, brandished or indicated that he possessed the weapon, or used it. He contends that although Ruby testified regarding the knife, there was no evidence a knife was present during the incident as Ruby was unable to identify the knife, none of the surveillance videos show a knife, and nothing links him to the knife found the following day when he was apprehended.

{¶31} However, contrary to Osborne's arguments, the jury's determination that a knife existed and that Osborne used it as a weapon during the offense was not against the manifest weight of the evidence. As mentioned in the first assignment of error, Ruby testified that Osborne had a weapon, pulled it out during the offense, and stabbed at her while she was in the back of the pickup truck. Her testimony is uncontroverted and is supported by the 9-1-1 call, as Ruby repeatedly told the dispatcher Osborne had a knife and was going to kill her. In body camera footage, Ruby told the officer at the scene that Osborne pulled a knife out and threatened her, tried to stab her in the bed of the truck and that she thought Osborne was going to kill her because he kept reaching around and trying to stab her with the knife. In addition, when Osborne was apprehended, a knife was found in the cupholder of the vehicle he was driving.

{¶32} Accordingly, we find that Osborne's conviction for aggravated robbery is not against the manifest weight of the evidence, and is therefore supported by sufficient evidence. Osborne's second and third assignments of error are therefore overruled.

{¶33} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.