[Cite as *State v. Lanier*, 2020-Ohio-3394.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                           Court of Appeals No. OT-19-025

     Appellee                                      Trial Court No. 18 CR 127

v.

 Darryl Lanier                                       **DECISION AND JUDGMENT**

     Appellant                                     Decided:  June 19, 2020

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Barbara Gallé Rivas, Assistant Prosecuting Attorney, for appellee.

Russell V. Leffler, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} Appellant, Darryl Lanier, appeals the June 28, 2019 judgment of the Ottawa County Court of Common Pleas, which, following a jury finding him guilty of felonious assault, sentenced him to four years in prison.  For the reasons that follow, we affirm.

## A. Facts and Proceedings

{¶ 2} On the night of May 5, 2018, Lanier and his girlfriend/fiancé, Sonia Gallardo, had pizza and drinks at a bar in Port Clinton, Ohio. As they left the bar, the two continued an argument that started over drinks concerning a picture on Gallardo's Facebook page. While driving toward the couple's home, the argument turned physical, culminating with Lanier backhanding Gallardo in the face, breaking her nose and chipping her tooth.

{¶ 3} The Ohio State Highway Patrol received a report of a driver, later identified as Lanier, heading east on Route 2 from Port Clinton to Sandusky, Ohio, alternating between speeding and slowing, and swerving on the road. The report included a description of the vehicle, a silver Dodge Avenger, as well as the vehicle's license plate number. Trooper Zach Steinbach responded and located the vehicle as described by dispatch, on Route 2 near the Route 6 exit.

{¶ 4} Steinbach began following the vehicle, travelling in the right lane toward the Route 6 exit. As he neared, the vehicle took the exit. Steinbach observed an arm waving from the passenger-side window, as if the passenger "was trying to alert something going on in the vehicle." After the arm waved a second time, viewed as a second call for help, Steinbach activated his lights to initiate a traffic stop. The vehicle came to a stop in a gas station parking lot, with Lanier at the wheel.

{¶ 5} Steinbach approached the vehicle and Lanier immediately volunteered that his passenger, Gallardo, fell and had a bloody nose. Steinbach noted Gallardo was

2.

bleeding from the bridge of her nose, and her clothes and purse were covered in blood. Steinbach called for backup, and removed Lanier from the vehicle.

{¶ 6} Trooper Rick Anderson responded first to the call for backup, followed soon after by Trooper Eric Mentis and Sergeant Thomas Halko. Steinbach informed Anderson that Gallardo was "pretty beat up." Anderson and Halko attended to Gallardo at the scene, while Mentis assisted Steinbach with Lanier.

{¶ 7} After his initial claim that Gallardo fell, Lanier provided other explanations for her injuries. Lanier also claimed Gallardo accidentally hit herself while attempting to strike him. In the alternative, he claimed Gallardo struck her face on the dash when he slammed on the brakes. Finally, he claimed a combination of falling outside the car and subsequently hitting her head on the dash. Lanier also claimed he was driving Gallardo to the hospital, contradicted by his assertion that they were headed home. Steinbach took photographs of Lanier, including a photograph showing blood on the back of Lanier's right hand. Lanier explained the presence of blood by claiming he attempted to wipe blood from Gallardo's face with the back of his hand.

{¶ 8} Troopers also took photographs of Gallardo and the inside of the vehicle. The photographs showed Gallardo covered in blood, with blood spatter mostly on the passenger side and center console. There was little blood on the dash in front of the passenger seat. Gallardo also provided a different version of events. She told the troopers she and Lanier had argued over a picture on Facebook. After he called her

3.

names, she hit him in the chest, telling him to stop, and he backhanded her in the face. Gallardo believed her nose was broken, and she felt a chipped tooth.

{¶ 9} Gallardo was transported to the hospital for treatment, and told Dr. Thomas Cramer, the treating doctor, that her boyfriend struck her. She complained of pain, consisting of aching and pressure, registering a ten on a scale of one to ten. After a CAT scan, Dr. Cramer determined Gallardo had "a comminuted, displaced fracture of her nasal bones bilaterally, both sides." Gallardo's nose was the result of broken bone, and not cartilage, with the nose "visibly shifted to the left." The CAT scan also revealed a second break, "a fracture of her nasal septum," or the thin bone in the middle of the nose. The doctor noted the bone poking through the skin, cleaned and sutured the wound, and prescribed antibiotics for the wound and pain medication. Dr. Cramer referred Gallardo to a specialist to reset the nasal bones, because the injury—while not life-threatening— required cosmetic surgery to realign the nose and prevent impaired breathing, a common condition caused by a deviated septum.

{¶ 10} Trooper Mentis and Sergeant Halko followed Gallardo to the hospital and took a written statement. Halko questioned Gallardo, but because she was shaking and unable to write, he wrote out both his questions and Gallardo's answers. Gallardo indicated she and Lanier argued over a Facebook post, she smacked Lanier in the chest, and he responded by striking her in the face, breaking her nose and chipping a tooth. Gallardo reviewed what Halko recorded in the written statement, and signed the statement. Halko took additional photographs of Gallardo, to catalog her injuries after

4.

medical personnel had cleaned the blood away. Gallardo had a swollen lip and a cut on her nose, with bone visible through the cut. Gallardo's hands were unmarked, with no bruising or cuts.

{¶ 11} On May 17, 2018, Lanier was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree. Lanier appeared for arraignment, with court-appointed counsel, and entered a not guilty plea. The trial court released Lanier on bond, but did not include a "no contact" order as a condition of Lanier's release, pending trial.

{¶ 12} On August 1, 2018, Lanier agreed to plead to simple assault, and the matter was "remanded to Ottawa County Municipal Court." Lanier filed a motion to withdraw his plea, prior to sentencing. The motion was granted, and the matter returned to common pleas court. The trial court granted Lanier's trial counsel leave to withdraw as his attorney, and the trial court appointed new trial counsel on March 1, 2019.

{¶ 13} The matter proceeded to a jury trial on April 30 through May 1, 2019. The state presented the testimony of Troopers Steinbach, Mentis, and Anderson, and Sergeant Halko, with each recounting their observations regarding Gallardo's injuries, as well as statements made by both Gallardo and Lanier on the night of the assault. The state also presented the testimony of Dr. Cramer, describing the injuries sustained by Gallardo, and the treatment required at the hospital. Finally, the state called Gallardo, herself, as a witness. Gallardo attempted to refute her prior statements, and downplayed her injury as minor, and the result of an accident, while also acknowledging her statements the night of

5.

the incident, implicating Lanier. In addition to the testimony, the state admitted numerous photographs of Gallardo's injuries and of the blood spatter inside the vehicle and on Lanier's hand, as well as Gallardo's medical records. The jury found Lanier guilty of felonious assault.

{¶ 14} On May 15, 2019, Lanier filed a motion for acquittal, arguing, in part, that the state failed to present evidence of felonious assault based on Gallardo's testimony of accidental, minor injury. The state opposed the motion. On May 20, 2019, the trial court denied the motion for acquittal.

{¶ 15} On June 28, 2019, the trial court held a sentencing hearing. After considering the statutory factors, the trial court found Lanier was not amenable to community control, and imposed a four-year prison term.

## B. Assignments of Error

{¶ 16} Lanier now appeals the judgment, arguing the following assignments of error:

1. It was plain error for the court to fail to instruct the jury on the lesser included offense of simple assault, depriving the appellant of a fair trial.

2. Trial counsel was incompetent for failing to request a lesser included offense instruction on simple assault, depriving the appellant of a fair trial.

6.

**{¶ 17}** Because the assigned errors concern the propriety of a lesser-included instruction to the jury, regarding misdemeanor assault, we address the assigned errors together.

## II. Analysis

**{¶ 18}** Lanier argues the lack of a lesser-included offense instruction deprived him of a fair trial, assigning blame to both the trial court and his trial counsel. "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), at paragraph three of the syllabus.

**{¶ 19}** Proof of felonious assault requires evidence that Lanier knowingly caused serious physical harm to Gallardo. R.C. 2903.11(A)(1). Simple assault is proven by showing a person knowingly caused, or attempted to cause, physical harm to another. R.C. 2903.13(A). Here, the parties do not dispute that misdemeanor assault is a lesser-included offense of felonious assault. *In re Shane L.F.*, 6th Dist. Huron No. H-05-014, 2006-Ohio-3876, ¶ 51, citing *State v. Hartman*, 130 Ohio App.3d 645, 647, 720 N.E.2d 971 (1st Dist.1998). Instead, Lanier argues that the lesser-included instruction was warranted because the evidence did not demonstrate the requisite *serious* physical harm.

7.

Therefore, he contends, the trial court erred in not giving the instruction, and his trial counsel was ineffective in failing to request the instruction.

{¶ 20} We presume a properly licensed attorney is competent, and therefore, Lanier bears the burden of showing his trial counsel made "errors so serious that counsel failed to function as the 'counsel' guaranteed by the Sixth Amendment." *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988), citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The decision to provide a lesser-included offense instruction to the jury, moreover, rests with the trial court. *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 17, 34.

{¶ 21} Lanier's trial counsel pursued a defense at trial based on claims of accidental injury and no serious physical harm. Even so, the trial court could have provided a lesser-included jury instruction for misdemeanor assault, regardless of Lanier's trial strategy. *See Wine* at ¶ 17. A lesser-included offense instruction is rooted in the common law, permitting a jury "to find the defendant guilty of any lesser offense necessarily included in the offense charged." *Wine* at ¶ 19, quoting *Beck v. Alabama*, 447 U.S. 625, 633, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). The common law rule, codified in R.C. 2945.74 and Crim.R. 31(C), may benefit the prosecution by securing a conviction where evidence is lacking on some element of the crime charged, or permit a jury to select a less drastic alternative between conviction of the charged offense and acquittal. *Wine* at ¶ 19, quoting *Beck* at 633.

8.

{¶ 22} Regardless of whether Lanier requested the instruction, "[A] charge on a lesser included offense is required when the facts warrant it and improper when the facts do not warrant it[.]" *Wine* at ¶ 20. "The law, the evidence presented, and the discretion of the trial judge play a role in whether lesser-included-offense instructions are appropriate. But the evidence is crucial[.]" *Wine* at ¶ 21. After viewing the evidence most favorably for the defendant, the trial court should charge on a lesser-included offense "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *Wine* at ¶ 21-22.

{¶ 23} Lanier argues that a jury could have found in his favor on the issue of serious physical harm. Serious physical harm includes "physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity," "physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement," or "physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(c)(d), and (e).

{¶ 24} The evidence presented at trial demonstrated Lanier struck Gallardo, resulting in pain and a broken nose. Furthermore, the evidence demonstrated that, by striking Gallardo, Lanier caused her nose to shift out of place and left a wound that exposed the bone. Gallardo needed stitches to close the wound, and left the hospital with a prescription for an antibiotic and a narcotic for her pain. Additionally, while Gallardo

9.

chose not to take pain medication or have a specialist realign the bones in her nose, as recommended by the treating physician, the evidence demonstrated her nose remained out of alignment and the deviation places her at risk for breathing difficulties unless she seeks further treatment, such as surgery.

{¶ 25} We have previously deemed the element of serious physical harm met where a victim's injuries require medical treatment. *See, e.g., State v. Lee*, 6th Dist. Lucas No. L-06-1384, 2008-Ohio-253, ¶ 26 (victim received pain medication and x-rays revealed a nasal fracture); *see also State v. Carter*, 6th Dist. Lucas No. L-18-1037, 2019-Ohio-2046, ¶ 12 (laceration to the forehead, requiring seven stitches, constituted "temporary serious disfigurement under R.C. 2901.01(A)(5)(d) and acute pain * * * under R.C. 2901.01(A)(5)(e)").

{¶ 26} In this case, Gallardo's injuries required medical treatment. Furthermore, while Gallardo downplayed the severity of her injuries at trial, the state presented overwhelming evidence of a broken, displaced nose and open wound, exposing the nasal bone and requiring stitches. This evidence included photographs, medical records, and statements provided by Gallardo, herself, the night of the assault.

{¶ 27} Accordingly, upon consideration of the evidence, we find that no reasonable jury could have found that Lanier did not knowingly cause serious physical harm to Gallardo. The trial court, therefore, did not err in failing to instruct the jury on the lesser-included offense of assault. Trial counsel, moreover, did not provide ineffective assistance by failing to request the lesser-included offense instruction, as

10.

counsel owes no duty to make a futile request. *State v. Mitchell*, 53 Ohio App.3d 117, 119, 559 N.E.2d 1370 (8th Dist.1988). We find Lanier's first and second assignments of error not well-taken.

### III. Conclusion

{¶ 28} Having found substantial justice has been done, we affirm the judgment of the Ottawa County Court of Common Pleas. Appellant is assessed the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.