[Cite as *State v. Thomin*, 2020-Ohio-4625.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2019-11-188<br>CA2019-12-199 |
| | : | |
| - vs - | | O P I N I O N |
| | : | 9/28/2020 |
| TERRY LEE THOMIN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2019-05-0733

Michael T. Gmoser, Butler County Prosecuting Attorney, John Heinkel, Government Services Center, 315 High St., 11th Floor, Hamilton, Ohio, for appellee

Michele Temmel, 6 S. Second Street, #305, Hamilton, Ohio 45011, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Terry Lee Thomin, appeals his conviction in the Butler County Court of Common Pleas after a jury found him guilty of felonious assault and kidnapping. For the reasons outlined below, we affirm.

{¶ 2} On June 5, 2019, the Butler County Grand Jury returned an indictment charging Thomin with felonious assault in violation of R.C. 2903.11(A), a first-degree felony,

and kidnapping in violation of R.C. 2905.01(A)(3), a second-degree felony. Both charges were accompanied by a repeat violent offender specification. According to the bill of particulars, the charges arose after Thomin struck the victim, C.M., "multiple times in her abdomen, face and extremities" on the evening of April 23, 2019 while at the victim's home located in Hamilton, Butler County, Ohio. The bill of particulars alleges that Thomin also tied C.M.'s "arms and legs together and, at one point tied her arms and legs behind her back." According to the bill of particulars, this attack caused C.M., an admitted heroin addict and crystal meth user, to suffer "significant bruising and an injury to her spleen that required surgical interventions."

{¶ 3} A two-day jury trial was held on October 2 and 3, 2019. During trial, the jury heard testimony from five witnesses. This includes testimony from C.M., as well as testimony from a doctor who performed emergency surgery on C.M. to remove her ruptured spleen five days after the assault occurred. Thomin did not offer any witnesses in his defense. Following deliberations, the jury returned a verdict finding Thomin guilty as charged. The trial court then held a sentencing hearing and sentenced Thomin to a total, aggregate mandatory minimum prison term of 19 years with a maximum possible term of 24-and-one-half years. The trial court also notified Thomin that he would be subject to a mandatory five-year postrelease control term upon his release from prison. Thomin now appeals his conviction, raising the following single assignment of error for review.

{¶ 4} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT AND KIDNAPPING AND THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 5} Thomin initially argues his conviction for felonious assault and kidnapping was not supported by sufficient evidence. We disagree.

**Sufficiency of the Evidence**

{¶ 6} "Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law." *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. "When evaluating the sufficiency of the evidence, this court defers to the trier of fact regarding questions of credibility." *State v. Wesley*, 12th Dist. Butler No. CA2015-04-077, 2015-Ohio-5031, ¶ 8, citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

Felonious Assault in Violation of R.C. 2903.11(A)(1)

{¶ 7} Thomin was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which prohibits any person from knowingly cause "serious physical harm" to another. *State v. Geiger*, 12th Dist. Warren No. CA2019-06-062, 2020-Ohio-2679, ¶ 18 ("[a] person is guilty of felonious assault if the person knowingly causes serious physical harm to another").

{¶ 8} Although the extent or degree of a victim's injuries is "normally a matter of the weight, rather than the sufficiency of the evidence," *State v. Irwin*, 7th Dist. Mahoning No.

06 MA 20, 2007-Ohio-4996, ¶ 37, Thomin nevertheless argues that his conviction for felonious assault must be reversed because the state failed to prove he caused serious physical harm to the victim, C.M.[1] As defined by R.C. 2901.01(A)(5)(b) thru (e), the phrase "serious physical harm" includes:

> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶ 9} The degree of harm that rises to the level of "serious" physical harm is not an exact science. *State v. Sharp*, 12th Dist. Butler No. CA2009-09-236, 2010-Ohio-3470, ¶ 11. However, while not an exact science, we find the state provided extensive evidence to prove Thomin caused serious physical harm to C.M. At trial, C.M. testified that Thomin poured lighter fluid on her body, held a knife to her throat, hogtied her with a rope or a cord, and repeatedly hit, punched, and kicked her in the face, "body, like in [her] abdomen area," and "whole mid-section," as well as her back and her eyes. C.M. also testified that Thomin drew an "X" on her abdomen area where she had previously had a large tumor removed several years earlier. C.M. testified that Thomin then repeatedly hit and punched her midsection on that "X."

{¶ 10} C.M. testified that Thomin's repeated hits, punches, and kicks to her face and

---

1. Although now arguing the state failed to prove he caused serious physical harm to C.M., we note that at sentencing Thomin's trial counsel acknowledged that C.M.'s injuries did rise to the level of "serious physical harm" as defined by R.C. 2901.01(A)(5). Specifically, as Thomin's trial counsel stated during mitigation, "I'm not going to speak to the injuries and the injuries were found to be serious, and they were * * *."

body turned her "just black and blue all over" and necessitated her being taken to the hospital to receive medical treatment. C.M. also testified that Thomin's hits, punches, and kicks caused her to suffer a broken nose, as well as an "extreme amount of pain" from the "bruising and stuff." C.M.'s testimony was confirmed by the photographs of her face and body as she laid in a hospital bed shortly after the assault occurred. These photographs exhibit severe bruises covering large portions of C.M.'s face, neck, arms, hands, and chest.

{¶ 11} These photographs also depict ligature marks on C.M.'s wrists and C.M.'s face with two black eyes, one of which was so badly bruised that the eye had already turned dark purple and swollen shut. C.M. testified that she was unable to see out of her badly bruised, swollen eye for at least "a day or so." This was in addition to C.M.'s testimony that Thomin's repeated hits and punches to the area where he had drawn an "X" on her abdomen caused "a lot of pain in her abdomen area" that "started to worsen over a couple of days" and "kept getting worse" until the "pain was so bad that [she] couldn't walk" and had to call an ambulance to take her to the hospital because she was "bleeding out." This evidence, standing alone, was sufficient to support the jury's verdict finding Thomin caused serious physical harm to C.M.

{¶ 12} "'[W]here injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5).'" *State v. Church*, 12th Dist. Butler No. CA2011-04-070, 2012-Ohio-3877, ¶ 18, quoting *State v. Lee*, 8th Dist. Cuyahoga No. 82326, 2003-Ohio-5640, ¶ 24; *State v. Lanier*, 6th Dist. Ottawa No. OT-19-025, 2020-Ohio-3394, ¶ 25 ("the element of serious physical harm [is] met where a victim's injuries require medical treatment"). Even a bruise, under certain circumstances, can constitute serious physical harm. *State v. Sharp*, 12th Dist. Butler No. CA2009-09-236,

2010-Ohio-3470, ¶ 11, citing *State v. Jarrell*, 4th Dist. Scioto No. 08CA3250, 2009-Ohio-3753, ¶ 14; *see, e.g., State v. Stover*, 3d Dist. Union No. 14-12-24, 2013-Ohio-5665, ¶ 44 (victim suffered serious physical harm where victim's "face was extremely bruised and swollen"). Therefore, after viewing the evidence in a light most favorable to the prosecution, the state provided sufficient evidence to support Thomin's conviction for felonious assault in violation of R.C. 2903.11(A)(1).

<u>Kidnapping in Violation of R.C. 2905.01(A)(3)</u>

{¶ 13} Thomin was also convicted of kidnapping in violation of R.C. 2905.01(A)(3), which prohibits any person, by force, threat, or deception, from restraining the liberty of another for the purpose "[t]o terrorize, or to inflict serious physical harm on the victim or another."

{¶ 14} Thomin argues his conviction for kidnapping must be reversed because the state failed to prove he restrained C.M.'s liberty by force or threat. However, despite Thomin's claims, C.M. specifically testified that Thomin "made" her sit on the edge of the bed located in her master bedroom and "started basically controlling [her]," telling her what she could do and what she could not do, forbidding her to "do anything else unless he gave [her] permission." C.M. testified that Thomin then "forced" her to get into the "corner of the room," hogtied her, poured lighter fluid over her body, held a knife to her throat, and broom or "something with a long handle" up to her face and threatened to "ram" it into her face or "drive it into [her] face or something." C.M. testified that Thomin then hit, punched, and kicked her in "abdomen area," her "whole mid-section," as well as her face, back, and eyes.

{¶ 15} When Thomin was not beating her, C.M. testified that Thomin stood in the doorway "the whole time," thereby preventing C.M. from leaving the room without his permission. C.M. testified this lasted for "hours" starting just before midnight and "went on

into the early hours of the morning." C.M. also testified that she was afraid that Thomin would "kill" her and that "there was like never really any opportunity for [her] to get away from him, not like far enough away from him where I felt like I could safely get away." C.M. additionally testified when asked why she never tried to leave:

> A: Well, he was in between me and the door the whole time, but other than that, I just – I thought he was going to kill me. I'm not very athletic. I didn't see that there was – that I was able to run and get away from him safely at any point.
>
> Q: Why didn't you ask him?
>
> A: I – well he – every time I opened my mouth to speak, he threatened to physically hurt me, unless I was directly answering something that he wanted – unless he was asking me a specific question and asked for an answer.
>
> Q: Who was in control of the situation?
>
> A: [Thomin] was definitely in control of the situation.

{¶ 16} In light of the foregoing, we find the state provided overwhelming evidence to prove Thomin restrained C.M.'s liberty by force or threat. This includes C.M.'s testimony that Thomin "forced" her into the corner of the room, hogtied her, poured lighter fluid over her body, held a knife to her throat, threatened to "ram" a broom or "something with a long handle" into her face, threatened to "physically hurt" her "every time" she went to speak, and hit, punched, and kicked her to the point where C.M. thought Thomin was going to "kill" her and, in fact, nearly did. Therefore, after viewing the evidence in a light most favorable to the prosecution, the state provided sufficient evidence to support Thomin's conviction for kidnapping in violation of R.C. 2905.01(A)(3).

**Manifest Weight of the Evidence**

{¶ 17} Thomin also argues his conviction for felonious assault and kidnapping was against the manifest weight of the evidence. We disagree.

{¶ 18} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168. However, while a manifest weight of the evidence review requires this court to evaluate credibility, the determination of witness credibility is primarily for the trier of fact to decide. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 140. This court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 19} Thomin argues his conviction must be reversed as being against the manifest weight of the evidence since C.M.'s testimony was "riddled with inconsistencies and drug induced forgetfulness." However, while Thomin believes C.M.'s testimony lacked credibility, it is well established that "a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11. This is because, "[a]s the trier of fact in

this case, the jury was in the best position to judge the credibility of witnesses and the weight to be given the evidence." *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24, citing *State v. Jones*, 12th Dist. Butler No. CA2015-02-020, 2015-Ohio-5029, ¶ 41. The jury was in fact free to believe or disbelieve all, part, or none of C.M.'s testimony. *State v. Helton*, 12th Dist. Warren No. CA2018-12-141, 2019-Ohio-4399, ¶ 22, citing *State v. Coleman*, 12th Dist. Butler No. CA2010-12-329, 2011-Ohio-4564, ¶ 26. By its verdict, the jury clearly choose to credit some, if not all, of C.M.'s testimony regarding the assault and her resulting injuries. This was well within the jury's purview as the trier of fact and ultimate fact finder. Therefore, because Thomin's conviction was supported by sufficient evidence and not against the manifest weight of the evidence, Thomin's single assignment of error lacks merit and is overruled.

{¶ 20} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.