[Cite as *State v. Baughn*, 2020-Ohio-5566.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-04-020 |
| | : | O P I N I O N |
| - vs - | | 12/7/2020 |
| | : | |
| LOUIS J. BAUGHN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019CR000765

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for appellant

**PIPER, J.**

{¶1} Appellant, Louis Baughn, appeals his convictions in the Clermont County Court of Common Pleas for multiple counts of gross sexual imposition and rape.

{¶2} Baughn was originally married, and had two children born issue of that marriage. He later divorced and remarried. Baughn's new wife had an eight-year-old daughter, "S.B.," and the two moved into Baughn's home. At first, the three lived in a cabin

on the property, but later moved into a trailer on the same property when Baughn received custody of his two children from his previous marriage. The five continued to live in the trailer on the property, which also had a barn. When S.B. was 24 years old, she moved out of the home she had shared with Baughn, her mother, and her two stepsiblings.

{¶3} When S.B. was in her early thirties, she made a police report that Baughn had sexually abused her, starting when she was eight years old. S.B. reported that Baughn digitally penetrated her vagina while the two were alone in the barn on the property. S.B. told police that as she aged, Baughn vaginally and orally raped her between two to three times a week. Some of the conduct occurred in the barn, and some occurred in her bedroom in the trailer. S.B. told police that when she turned 16 years old, she told Baughn that she would report him to police if he did not stop raping her. At that point, the sexual abuse ceased.

{¶4} As part of the investigation, S.B. made two controlled phone calls. During the phone calls, Baughn did not deny the rape and sexual abuse allegations, and instead, among other things, said he could not explain why he did the things he did, that he was sorry, and he promised S.B. that it would not happen again to another child.

{¶5} Baughn was indicted on multiple counts of rape and gross sexual imposition ("GSI") to which he pled not guilty. During the jury trial, Baughn testified in his own defense. During his testimony, Baughn admitted that he had sexual relations with S.B., but claimed that the conduct only occurred once S.B. became an adult. Baughn told the jury that S.B. exchanged sexual favors for pain killers he had been prescribed after breaking his back. Baughn claimed that when he refused to provide S.B. with further pills, she began to make claims of sexual abuse and ultimately reported such claims to police.

{¶6} The jury found Baughn guilty on all counts. The trial court sentenced Baughn to an aggregate sentence of life in prison, without parole eligibility, plus seven years.

Baughn now appeals his convictions, raising the following assignments of error. As the first two assignments of error are interrelated, we will address them together.

{¶7} Assignment of Error No. 1:

{¶8} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY FAILING TO GRANT DEFENDANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL.

{¶9} Assignment of Error No. 2:

{¶10} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY UPON THE JURY'S VERDICT BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Baughn argues in his first two assignments of error that his convictions were against the manifest weight of the evidence and not supported by sufficient evidence.

{¶12} The standard of review for a denial of a Crim.R. 29 motion is the same standard used for reviewing a sufficiency of the evidence challenge. *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would support a conviction. *State v. Gross*, 12th Dist. Preble No. CA2018-01-001, 2018-Ohio-4557, ¶ 15. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Baikov*, 12th Dist. Fayette No. CA2019-11-023, 2020-Ohio-4876, ¶ 13.

{¶13} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the

reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶14} Questions regarding witness credibility and weight of the evidence "are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. As a result, "the question upon review is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Erdmann*, 12th Dist. Clermont Nos. CA2018-06-043 and CA2018-06-044, 2019-Ohio-261, ¶ 23. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶15} Baughn was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which prohibits sexual contact with one who is less than 13 years old. Baughn was also convicted of rape in violation of R.C. 2907.02(A)(1)(b), which prohibits sexual conduct with one who is less than 13 years old, and R.C. 2907.02(A)(2), which provides that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶16} Ohio's Revised Code defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.

2901.01(A). "However, the definition of 'force' changes when the victim is a child, accounting for the fact that adults can compel children to submit to sexual conduct by means of psychological coercion or use of authority over the child." *State v. Grant*, 12th Dist. Brown Nos. CA2014-03-005 and CA2014-03-006, 2015-Ohio-723, ¶ 20.

{¶17} This court has specifically recognized that "force" "need not be overt and physically brutal, but can be subtle and psychological." *State v. Rankin*, 12th Dist. Clinton No. CA2004-06-015, 2005-Ohio-6165, ¶ 47. A child's will can be overcome by fear and duress when an important figure of authority tells the child to do something, and commands the child not to tell anyone about it. *State v. Dehner*, 12th Dist. Clermont No. CA2012-12-090, 2013-Ohio-3576, ¶ 19. When the state proves that the child's will was overcome by fear or duress, the element of force is established. *Id.*

{¶18} After reviewing the record, we find that Baughn's convictions are not against the manifest weight of the evidence and are supported by sufficient evidence. The state presented testimony from the victim that Baughn began to sexually abuse her when she was eight years old. The victim testified that the first instance of sexual abuse occurred when she and Baughn were alone in the barn and he touched her vagina underneath her clothing and digitally penetrated her.

{¶19} Approximately two months later, Baughn vaginally raped the victim in the same barn. The victim testified that Baughn threatened to kill her, her mother, and her father if she told anyone of the rape, and that Baughn told her to "spread-eagle" before he penetrated her vagina with his penis. The victim testified that Baughn was the disciplinarian in the home, and that Baughn would "whoop" her if she did not do as told. As the abuse continued, Baughn forced oral sex upon the victim as well.

{¶20} The victim testified that the sexual abuse occurred two to three times a week and in various locations. The abuse occurred in the barn, as well as in her bedroom while

her mother was bathing or sleeping. She also testified that once her stepsisters moved into the home, the abuse would occur while her stepsisters were sleeping at the other end of the trailer in their shared bedroom or while the girls were visiting with their mother. As she aged, Baughn began to take the victim off the property, such as to go fishing, and would pull over on the side of the road to rape her before reaching their ultimate destination.

{¶21} The victim testified that she reached puberty and began to menstruate at ten years old. At one point, when she was approximately 13 or 14 years old, the victim told Baughn she might be pregnant because she had missed her period. After that point, Baughn began to use condoms when raping the victim.

{¶22} The victim testified that when she was 16 years old, she threatened to call the police if Baughn did not stop abusing her. Baughn's sexual abuse ceased at that time. However, before that time, the victim testified that she was "terrified" of Baughn, who disciplined her throughout her childhood with a belt and a wooden paddle. The victim specifically testified that Baughn threatened her continually throughout the course of the abuse, thus establishing Baughn's use of force specific to the rapes. The victim testified that she did not tell anyone of the abuse during or after it stopped because she was afraid of Baughn and also of losing the home in which she and her mother lived.

{¶23} The victim, who was in her early thirties at the time of trial and a mother of two children, testified that she finally told her mother about the abuse because her mother wanted to know why the victim never allowed her children to spend the night at her and Baughn's home. The victim told her mother during a phone call that she would not allow her children to spend the night in fear that Baughn would sexually abuse them the way she had been sexually abused throughout her childhood. The victim testified that she heard her mother ask Baughn if the allegations were true, and heard Baughn admit that he had raped her. The victim's mother then told Baughn to leave the home.

{¶24} The victim testified that she told an aunt, her fiancé, and her father about the abuse as well. She then went to police to report the abuse. As part of the investigation, the victim participated in controlled calls with Baughn. During the recorded phone calls, Baughn never denied that he raped the victim, and instead, told her that he knew that what he did to her was "wrong" and that he did not know why it happened. The victim also stated during one phone call that she was eight years old when the abuse started and that it occurred continually, and Baughn did not deny either statement. Instead, Baughn was concerned with how many people were going to learn of the events, and also threatened that if anyone confronted him further, they would be hurt.

{¶25} In the other controlled call, the victim asked Baughn what he had told her mother about the abuse and Baughn stated, "I told her that I did." Baughn also stated that he was "sorry" for what he did to the victim and that he wished he "could change things." Baughn also stated that he had apologized to the victim's mother for his actions, and that it would not happen again to any other child. Again, Baughn never denied having raped the victim as a child or contended that the abuse did not occur. Baughn did not discuss exchanging sexual favors for painkillers with the victim or allude to any such activity.

{¶26} However, during his testimony, Baughn told the jury that he did not sexually abuse S.B. during her childhood, and instead, insisted that he had consensual sexual relations with her in exchange for pain pills. Baughn testified that the only reason S.B. made a police report of sexual abuse was because he stopped providing her pain pills.

{¶27} The jury was in the best position to judge the credibility of all witnesses, including Baughn when he testified that he did not rape S.B. or have sexual contact with her when she was a child. By virtue of its verdict, the jury found S.B. more credible and did not believe Baughn's explanation. We find that the jury did not clearly lose its way in making

its credibility determination, nor did it create such a manifest miscarriage of justice that Baughn's convictions must be reversed.

{¶28} After reviewing the record, we find that Baughn's convictions are supported by sufficient evidence and were not against the manifest weight of the evidence. As such, Baughn's first two assignments of error are overruled.

{¶29} Assignment of Error No. 3:

{¶30} APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE.

{¶31} Baughn argues in his third assignment of error that his trial counsel was ineffective.

{¶32} To establish a claim of ineffective assistance of counsel, an appellant must show that counsel's actions were outside the wide range of professionally competent assistance and that he or she was prejudiced as a result of counsel's actions. *State v. Patrick*, 12th Dist. Butler No. CA2015-05-090, 2016-Ohio-995, ¶ 13, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

{¶33} Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 698. An appellant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. *State v. Williams*, 12th Dist. Butler No. CA2020-01-009, 2020-Ohio-5228, ¶ 25.

{¶34} Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. It is not the role of the appellate court to second-guess the strategic decisions of trial counsel. *State v.*

*Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383, ¶ 61. The decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel. *State v. Murphy*, 91 Ohio St.3d 516, 524, 2001-Ohio-112. "[T]he scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *Id.* at ¶ 32.

{¶35} Baughn claims that his trial counsel was ineffective for the way in which trial counsel cross-examined the victim because it was not in-depth enough and did not adequately test the victim's credibility. However, the record demonstrates that counsel's cross-examination of the victim did not constitute deficient conduct where defense counsel asked specific questions to challenge the victim's credibility and questions specific to Baughn's assertion that the victim exchanged sexual favors for prescription pain killers. There is no indication in the record that had defense counsel pressed the victim further, her testimony would have changed, or that she would have agreed with Baughn's assertion that she exchanged sexual favors for pills.

{¶36} While Baughn suggests several questions that defense counsel could have posed, there is no indication in the record that such questions would have done anything to change the jury's credibility determinations regarding Baughn or the victim. In fact, the questions, to which we do not know the answers, could have strengthened the state's case or further exposed Baughn's abuse.

{¶37} The law in Ohio is clear that cross-examination falls within the ambit of trial strategy and does not establish ineffective assistance of counsel. While defense could have continued to ask the victim questions about pain killers and having consensual sexual conduct with Baughn as an adult, such could very well have alienated the jury or provided the victim more opportunities to deny Baughn's contention of a consensual sexual

relationship. This is true where the jury had already heard controlled phone calls in which the victim made specific reference to her being a child when the abuse started and Baughn not denying that the conduct occurred when the victim was eight years old.

{¶38} Based on our review of the entire record, we find that defense counsel was not ineffective in his cross-examination of the victim. The record plainly indicates that defense counsel tested the victim's credibility and raised the issue of a consensual sexual relationship between the victim and Baughn. These two issues formed the basis of the defense's trial strategy, and we will not second-guess that strategy simply because it was unsuccessful.

{¶39} Baughn's convictions were not the result of defense counsel's deficient cross-examination, but instead, because of the victim's more credible testimony compared to that of Baughn. There is no indication in the record that Baughn would have been acquitted had the victim's cross-examination been conducted differently. Accordingly, Baughn's third assignment of error is overruled.

{¶40} Despite affirming Baughn's convictions, we sua sponte recognize a sentencing issue as raised by the state in its reply brief. At the time Baughn committed the rapes as charged in Counts 2 thru 6 of the indictment, R.C. 2907.02(B) stated, "[w]hoever violates this section is guilty of rape, a felony of the first degree.* * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."

{¶41} Between 1996 and 2001, the statute contemplated parole eligibility where the defendant was sentenced to life in prison. R.C. 2967.13. Pursuant to R.C. 2967.13(E), in effect at the time of Baughn's offenses, "a prisoner serving a sentence of imprisonment for life for rape or felonious sexual penetration becomes eligible for parole after serving a term of ten full years' imprisonment * * * "

{¶42} Therefore, as to Counts 2 thru 6, Baughn faced life in prison with parole eligibility after ten years, rather than life in prison without the possibility of parole. The trial court incorrectly sentenced Baughn to life in prison without the possibility of parole, and he must be resentenced as to Counts 2, 3, 4, 5, and 6 to prison terms of ten years to life in prison. The court may then decide to run those counts concurrently or consecutively.

{¶43} Judgment affirmed in part and reversed in part, and the matter is remanded for the sole purpose of resentencing.

M. POWELL, P.J., and RINGLAND, J., concur.