[Cite as *State v. Martin-Paley*, 2021-Ohio-1631.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2020-05-032 |
| Appellee, | : | O P I N I O N |
| | | 5/10/2021 |
| | : | |
| - vs - | : | |
| | : | |
| CHERRY MARTIN-PALEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2019TRC000713

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Brock A. Schoenlein, 371 West First Street, Second Floor, Dayton, OH 45402, for appellant

**M. POWELL, P.J.**

{¶ 1} Appellant, Cherry Martin-Paley, appeals from her conviction in the Warren County Court for operating a vehicle while under the influence of alcohol or drug of abuse ("OVI"). For the reasons discussed below, we affirm her conviction.

{¶ 2} Appellant was charged with OVI, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(a), and failure to maintain control, a minor misdemeanor in violation of

R.C. 4511.202. The matter proceeded to a trial. The OVI offense was tried to a jury and the failure to maintain control offense was tried to the bench. The state called four witnesses to testify: Gail Nies, a motorist who initially reported appellant's erratic driving; Corporal Ney and Officer Holbrook, the responding law enforcement officers; and Treena Wiebe, a forensic toxicologist from the Montgomery County Coroner's Office and Miami Valley Regional Crime Laboratory. The state's evidence also included the laboratory analysis report of appellant's urine sample collected after her arrest. In her defense, appellant presented the testimony of Dr. Nelson, the medical doctor treating her for pain management, and Dr. Greer, her primary care physician. Appellant's evidence also included medical records relating to a sleep study conducted on her by a third doctor. The following facts were adduced from the trial.

{¶ 3} On March 24, 2019, Gail Nies, was driving on I-675 in Montgomery County, Ohio when she observed another vehicle swerving and intermittently changing its speed. Nies called 9-1-1 to report the erratic driving and expressed her concern that there must be something wrong with the driver of the vehicle. Nies continued to follow the vehicle as it traveled into Warren County, Ohio and kept watch until police could respond. Nies followed the vehicle for 30 to 45 minutes. While she followed the vehicle, she observed it cross the center line and drive into the oncoming lane of traffic dozens of times. Nies also saw the vehicle drive off the road into an adjoining yard and strike a mailbox. Nies was present when police officers stopped the vehicle.

{¶ 4} Clearcreek Township police officer, Corporal Ney, was the first law enforcement officer to locate the vehicle. He was able to confirm that he had the correct vehicle based on the license plate number and description provided by Nies. When Ney first encountered the vehicle, he observed it stopped at a traffic light at the intersection of State Route 48 and State Route 73. He noticed that the vehicle remained stationary at the

- 2 -

intersection through three light cycles. This suspicious behavior supported the 9-1-1 reports from other motorists. Ney then initiated a traffic stop of the vehicle. The vehicle pulled over at a local park on State Route 48.

{¶ 5} Upon approaching the vehicle, Ney found the driver, whom he identified as appellant, slumped over and apparently asleep. Ney, who had experience with drivers suffering from medical emergencies, inquired into appellant's well-being. Appellant responded that she had a lot going on with her medical condition, was on a lot of medication, and trying to find her way home. Appellant told the officer that she lived in Riverside. This raised an additional concern as to appellant's impairment because her home was located in the opposite direction from the direction she was traveling. Ney requested appellant's license and registration. When she reached into her purse for her driver's license, she appeared to fall asleep again. Ney had to gently rouse her so that she could produce her license and registration. Ney noticed that appellant displayed glassy eyes, slurred speech, and had uncoordinated, slowed motor skills. Ney described appellant as disoriented and confused.

{¶ 6} Ney returned to his police cruiser to verify appellant's identity. While performing this task, a back-up Clearcreek Township police officer, Officer Holbrook, arrived. Ney and Holbrook returned to appellant's vehicle and found that she had fallen asleep again. Ney woke her up and asked her to exit the vehicle in order to conduct field sobriety testing. Both officers testified that appellant had difficulty exiting the vehicle. Ney attempted to administer the horizontal gaze nystagmus test, but appellant kept falling asleep and needed help from Holbrook to remain standing. Ney decided not to conduct further field sobriety testing based on appellant's condition. Holbrook, who is trained in alcohol and drug impairment, testified that appellant appeared to be under the influence of "some sort of depressant or narcotic" based on appellant's physiological condition during

the roadside investigation.

{¶ 7} Ney arrested appellant for OVI and transported her to the police department. Appellant agreed to provide a urine sample for chemical testing, however, she again fell asleep while providing the specimen. It took nearly an hour for appellant to successfully complete the specimen collection process. After completing the collection, appellant sat at a table and slept until her husband picked her up.

{¶ 8} The laboratory analysis of appellant's urine screen revealed the presence of several drugs: desvenlafaxine, quetiapine, venlafaxine, diphenhydramine, diazepam, nordiazepam, oxazepam, temazepam, cetirizine, metoprolol, promethazine, and ranitidine breakdown.[1] Appellant's witness, Dr. Greer, testified that each of the chemical substances found in appellant's urine screen appeared to be from medications he prescribed to appellant or over-the-counter medication. He prescribed duloxetine and quetiapine to treat depression. Dr. Greer explained that the desvenlafaxine and venlafaxine substances found in appellant's urine were likely metabolites of duloxetine. Dr. Greer also prescribed diazepam, a benzodiazepine, to treat appellant's depression and muscle spasms. He explained that the nordiazepam, oxazepam, and temazepam were likely metabolites from the diazepam. Dr. Greer also testified that he prescribed promethazine to treat nausea and metoprolol to treat high blood pressure. Diphenhydramine, commonly known by its commercial name Benadryl, is an over-the-counter medication used to treat allergy symptoms. Another medication prescribed to appellant by Dr. Nelson, the opiate buprenorphine, was not detected in the urine screen.

{¶ 9} The forensic toxicologist opined that each of the drugs found in the urine

---

1. The laboratory report indicated only a presumptive identification for metoprolol, cetirizine, and the ranitidine breakdown. The forensic toxicologist testified that the standard analysis process involves two tests. When a substance is identified in one test but is not identified in a second test, or there is no second testing method available for that substance, the policy of the laboratory is to report a presumed positive for the substance.

screen have commonly known side effects of drowsiness, dizziness, blurred vision, confusion, and faintness. She also opined that appellant's behavior on the day of the offense was consistent with these known side effects. Dr. Greer conceded that the medications he prescribed, and the over-the-counter medications, may produce those side effects which could impair driving.

{¶ 10} However, Dr. Greer opined that it was unlikely appellant suffered these side effects because she had been taking these medications for nearly a decade and had not reported adverse effects to him in the past. Dr. Greer acknowledged that his opinion regarding the medications' effects upon appellant was generally limited to appellant's self-reporting. Dr. Nelson similarly opined that the medication he prescribed, buprenorphine, was not affecting appellant because it did not show up in the urine screen. Both of the doctors opined that appellant's condition on the day of the offense was not caused by her medications. A medical report from a third doctor diagnosed appellant with sleep apnea. Dr. Greer testified that individuals with sleep apnea lack a restful sleep and are fatigued during the day. This fatigue may cause the individual to easily fall asleep when the body becomes relaxed. The rapid onset of sleep from sleep apnea could occur while driving due to the fatigue and relaxed seated position.

{¶ 11} At the conclusion of the trial, the jury found appellant guilty of the OVI offense. The trial court also found appellant guilty of the failure to maintain control offense. The trial court sentenced appellant according to law. Appellant now appeals her conviction for the OVI offense. She assigns two errors for review. For ease of discussion, we will consider both assignments of error together.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION.

{¶ 14} Assignment of Error No. 2:

{¶ 15} APPELLANT'S CONVICTION WAS ENTERED AGAINST THE WEIGHT OF THE EVIDENCE.

{¶ 16} In her first assignment of error, appellant argues that the trial court erred by denying her Crim. R. 29 motion for acquittal. She claims that there was insufficient evidence to convict her of the OVI offense because the state failed to prove that her impairment was caused by a drug of abuse. Appellant concedes that she was impaired but contends that the state was required to put forth more evidence that the impairment was caused by a "drug of abuse." In her second assignment of error, appellant challenges the jury's guilty verdict as being against the manifest weight of the evidence.

{¶ 17} The standard of review for a denial of a Crim.R. 29 motion is the same standard of review used for a sufficiency of the evidence challenge. *State v. Baughn*, 12th Dist. Clermont No. CA2020-04-020, 2020-Ohio-5566, ¶ 12, citing *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Ruth*, 12th Dist. Fayette No. CA2019-08-018, 2020-Ohio-4506, ¶ 18. The relevant inquiry in reviewing the sufficiency of the evidence is whether the evidence, viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 9. In determining the sufficiency of the evidence, the reviewing court does not consider credibility of a witness. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 169.

{¶ 18} A manifest weight of the evidence challenge, on the other hand, requires this court to examine the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue over the other. *State v. Grindstaff*, 12th Dist. Clermont No.

CA2013-09-074, 2014-Ohio-2581, ¶ 46. In analyzing a challenge to the manifest weight of the evidence, this court must review the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 25. Although a manifest weight challenge requires this court to consider witness credibility, we must be mindful that the determination of witness credibility is primarily for the trier of fact to decide. *State v. Baker,* 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. To that end, this court will overturn a conviction due to the manifest weight of the evidence only in the extraordinary circumstance where the evidence presented at trial weighs heavily in favor of acquittal. *State v. Thomin*, 12th Dist. Butler Nos. CA2019-11-188 and CA2019-12-199, 2020-Ohio-4625, ¶ 18.

{¶ 19} Appellant was convicted of OVI in violation of R.C. 4511.19(A)(1)(a). This statute provides that "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." At trial, there was no evidence that alcohol was involved, therefore the conviction is contingent upon impairment by a drug of abuse. A "drug of abuse" is defined in R.C. 4511.181(E) by reference to R.C. 4506.01. According to that section, a drug of abuse is "any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes." R.C. 4506.01(M). R.C. 4729.01(F)(1)(b), in turn, defines dangerous drug as a "drug [that] may be dispensed only upon a prescription."

{¶ 20} The trial court instructed the jury that some of the various substances found in the urine screen — for example diazepam, venlafaxine, and quetiapine — were to be considered drugs of abuse. Appellant did not object to that instruction at trial and does not argue the instruction was plain error in this appeal. Instead, appellant argues there was no evidence to prove the nexus between her state of impairment and the medications she used. The Second District Court of Appeals has explained that "in order to establish a violation of R.C. 4511.19(A)(1)(a) based on medication, the State must also present some evidence (1) of how the particular medication actually affects the defendant, and/or (2) that the particular medication has the potential to impair a person's judgment or reflexes." (Internal citation omitted.). *State v. May*, 2d Dist. Montgomery No. 25359, 2014-Ohio-1542, ¶ 48. In addressing the question of sufficiency of the evidence for an OVI based on a drug of abuse, the Ohio Supreme Court has explained that the state must prove administration of the drug into the body, such as by ingestion, and a resulting impairment. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, ¶ 14. Similarly, we have explained that the state is not required to prove the quantity of a drug of abuse or even the timing of when the drug was administered; it is only necessary for the state to show the defendant's use of the drug and impairment. *State v. Comer*, 12th Dist. Warren No. CA2017-09-135, 2018-Ohio-2264, ¶ 23. The state is not required to prove a "definitive" nexus between the drug and the impairment. *State v. Bowden*, 1st Dist. Hamilton No. C-190396, 2020-Ohio-4556, ¶ 16, *citing Richardson* at ¶ 18.

{¶ 21} The evidence sufficiently established that appellant had ingested the medications with resulting impairment. First, appellant told the arresting officer, Ney, that she had a lot going on with her medical condition and was on a lot of medication. Appellant's statement suggests that she believed her medications to be adversely affecting her. Beyond appellant's statements, the urine screen confirmed the presence of several

substances in appellant's body. Officer Holbrook testified that based on his training and experience, appellant appeared to be under the influence of a depressant or narcotic drug. Second, there was evidence that each of the substances found in appellant's urine screen had possible side effects that could impair a person's ability to drive. The forensic toxicologist testified that each of the substances found had common side effects of drowsiness, dizziness, and confusion. Appellant's expert witness, Dr. Greer acknowledged that the medications he prescribed to appellant had these known side effects. Based on the foregoing, we find that the state provided sufficient evidence for any rational trier of fact to find that appellant's impairment was linked to a drug or drugs of abuse. There was evidence that appellant administered medication to herself, was impaired, and that her impairment was related to the medication. We do not consider or weigh witness credibility when considering the sufficiency of the evidence. Accordingly, appellant's first assignment of error is overruled.

{¶ 22} Turning now to the manifest weight of the evidence challenge, based upon the evidence detailed above, we find that the jury did not clearly lose its way convicting appellant of the OVI offense. While appellant presented evidence that she was diagnosed with sleep apnea as an alternative explanation for her behavior on the day of the offense, a conviction is not against the manifest weight of the evidence because the jury instead believed the evidence presented by the state. *Erickson*, 2015-Ohio-2086 at ¶ 42. The jury is free to believe or disbelieve all, or part of, the evidence presented at trial. *Thomin*, 2020-Ohio-4625 at ¶ 19. This is not the extraordinary case where the evidence weighs heavily in favor of acquittal. Appellant's second assignment of error is overruled.

{¶ 23} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.